Azar Mouzari, Esq. (State Bar No. 263461)
Nilofar Nouri, Esq. (State Bar No. 311871)
**BEVERLY HILLS TRIAL ATTORNEYS, P.C.**
468 N. Camden Drive, Suite 238
Beverly Hills, California 90210
Tel:  310-858-5567
Fax: 424-286-0963
Email: azar@bhtrialattorneys.com
Email: nilofar@bhtrialattorneys.com

Attorneys for Plaintiff AISHA MCKINNEY, VICTORIA TORRES, JOAO CORREIA and
Proposed Class

## UNITED STATED DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AISHA MCKINNEY, individually; VICTORIA TORRES, individually; JOAO CORREIA, individually, and on behalf of all others similarly situated,<br><br>                  Plaintiff,<br><br>          v.<br><br>JUNIPER HOSPITALITY, LLC, a California Limited Liability Company, and DOES 1-10, inclusive.<br><br>                  Defendants. | Case No.: 2:22-cv-03032-MEMF-AGR<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>**1) VIOLATION OF THE AMERICANS WITH DISABILITIES ACT OF 1990, 42 U.S.C. § 12181**<br><br>**2) VIOLATION OF UNRUH CIVIL RIGHTS ACT (CALIFORNIA CIVIL CODE §§ 51, 52, *et seq.*)**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiffs, Aisha McKinney, Victoria Torres and Joao Correia ("Plaintiffs"), individually and on behalf of all others similarly situated, allege the following based upon information and belief:

## I. NATURE OF THE CASE

1. Plaintiffs, individually and on behalf of all others similarly situated persons (hereafter "Class Members"), bring this civil rights action against Juniper Hospitality, LLC, a California Limited Liability Company, ("Defendant") seeking to put an end to the systemic civil rights violations committed by Defendant against Plaintiffs and the Class Members.

2. Plaintiffs are visually-impaired and legally blind persons who require screen-reading software to access and read website content using their computer. Plaintiffs use the terms "blind" or "visually-impaired" herein to refer to all people with visual impairments who meet the legal definition of blindness in that they fall within the meaning of the Americans with Disabilities Act ("ADA") and California's Unruh Civil Rights Act ("UCRA"), Cal. Civ. Code § 51, *et seq.* and have a visual acuity with correction of less than or equal to 20 x 200.

3. Plaintiffs, and all other visually impaired individuals, are unnecessarily denied equal access to the same online information and goods and services offered to others because Defendant's website, https://www.juniperandivy.com/ (the "Website"), and all subgroups of webpages contained in the Website are not fully accessible to screen-reading technology used by blind individuals. This relegates visually impaired customers of Defendant to a second-class experience. If Defendant's Website was accessible, then visually impaired individuals could independently access information relating to the pricing, description, and details of Defendant's goods and services, with the same convenience available to others. In contrast with Defendant,

many other businesses operate websites and mobile applications that are fully accessible to visually impaired individuals.

4.    Upon information and belief, Plaintiffs allege that Defendant owns, operates, markets and/or monetizes restaurants, including one(s) located in California.  The restaurant(s), which are places of public accommodation open to the public, offer various dining and drink options to customers.

5.    Upon information and belief, Plaintiffs allege that Defendant owns, operates, manages, updates and/or monetizes its Website, which provides to the public a wide array of services, information, online reservation features, price lists, menus and/or other programs relating to the brick-and-mortar restaurant(s).

6.    Defendant's Website contains significant access barriers that make it impossible for visually impaired customers to properly and fully utilize the Website. Specifically, these barriers make it impossible for Plaintiffs, and the Class Members, to have full access to the Website and independently review dining menus, make restaurant reservations and/or review pricing and detailed information about other services offered by Defendant online.

7.    Defendant thus excludes the visually impaired from full and equal participation in the growing Internet economy that is increasingly a fundamental part of the common marketplace and daily living.  In the wave of technological advances in recent years, assistive computer technology is becoming an increasingly prominent part of everyday life for visually impaired individuals, allowing them to fully and independently access a variety of services, including making dining reservations, reviewing restaurant menus and reserving other services.

8.    Despite readily available methods to render websites fully accessible to all, such as the methods in use by other restaurants, which make correct and proper use of alternative text,

accessible forms, descriptive links, resizable text, and labels, Defendant has failed to design, construct, maintain, and operate its Website to be fully accessible to and independently usable by Plaintiffs and other visually-impaired individuals, including the Class Members.

9.   Defendant's denial of full and equal access to its Website, and therefore denial of its products and services offered thereby and in conjunction with its physical location, is a violation of Plaintiffs and the Class Members' rights under the ADA and California's UCRA.

10. Title III of the Americans with Disabilities Act of 1990 (42 U.S.C. §§ 12101 et seq.) and California's Unruh Civil Rights Act (Cal. Civil Code §§ 51-53) have provided a clear, national mandate for the elimination of discrimination against individuals with disabilities.  Such discrimination includes barriers to full integration, independent living, and equal opportunity for persons with disabilities, including those barriers created by websites and other public accommodations that are inaccessible to blind and visually impaired persons.  Specifically, the ADA mandates that places of public accommodation, provide auxiliary aids and services to make visual materials available to individuals who are visually impaired, including Plaintiffs. Under the ADA, a place of public accommodation engages in unlawful discrimination if it fails to "take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services." 42 U.S.C. § 12182(b)(2)(A)(iii). Additionally, California state law mandates equal protection of persons with disabilities, requiring that places of public accommodation provide access to goods, services and facilities for persons with disabilities. *See* UCRA, Cal. Civ. Code § 51, *et seq*.

11. Unless Defendant remedies the numerous access barriers on its Website, Plaintiffs and the Class Members will continue to be unable to independently navigate, browse, use, access

and/or complete a transaction on the Website. Because Defendant's Website is not equally accessible to blind and visually-impaired consumers in violation of the ADA and the UCRA, this complaint seeks declaratory and injunctive relief to correct Defendant's policies and practices to include measures necessary to ensure compliance with federal and state law and to include monitoring of such measures, to update and remove accessibility barriers on the Website so that Plaintiffs and the Class Members may be able to independently and privately use Defendant's Website. This complaint also seeks compensatory damages to Plaintiffs and the Class Members for having been subjected to unlawful discrimination.

## II. JURISDICTION AND VENUE

12. This Court has subject-matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 42 U.S.C. § 12181, as Plaintiffs' claims arise under Title III of the ADA, 42 U.S.C. § 12181, *et seq*., and 28 U.S.C. § 1332. Supplemental jurisdiction for claims brought under parallel California law – arising from the same nucleus of operative facts – is predicated on 28 U.S.C. § 1367. Plaintiffs' Unruh Act claims are formed from the same case and/or controversy and are related to Plaintiffs' ADA claims. A violation of the ADA is a violation of the Unruh Act. (Cal. Civil Code § 51(f)).

13. This Court also has personal jurisdiction over Defendant because it conducts and continues to conduct a substantial and significant amount of business in the State of California, and because Defendant's offending Website is available across California. The brick-and-mortar location(s) of Defendant's subject restaurant(s) are also located in the State of California.

14. Defendant has been and is committing the acts alleged herein in the Central District of California, and has been and is violating the rights of Plaintiffs and other consumers with disabilities in this District, and has been and is causing injury to Plaintiffs and the Class

Members in this District.  All events giving rise to Plaintiffs' causes of action took place in the State of California, County of Los Angeles. Therefore, jurisdiction of this Court is proper.

15. Venue is proper in this Court because Plaintiffs reside in this District, Defendant conducts and continues to conduct a substantial and significant amount of business in this District, Defendant is also subject to personal jurisdiction in this District, and a substantial portion of the conduct complained of herein occurred in this District.

## III. PARTIES

16.  Plaintiffs, at all times relevant and as alleged herein, are residents of California, County of Los Angeles.

17. Plaintiffs are blind, visually-impaired handicapped persons. Plaintiffs use screen-reader software to access and operate websites and mobile applications. Plaintiffs are knowledgeable about certain tools which allow visually impaired individuals to access websites, including various screen-reader software.

18. Plaintiffs have attempted to use Defendant's Website, as recently as early 2022, in order to access information concerning Defendant's services, offers, dining and drink options and/or online dining reservations.  They have been unable to access information and services offered to others through the Website.  They desire to use Defendant's Website and have the necessary computer technology to do so if it were fully accessible to the visually impaired.

19. The access barriers Plaintiffs have encountered on Defendant's Website have deterred Plaintiffs from visiting Defendant's brick-and-mortar location(s).

20. Unnamed Class Plaintiffs, are, and at all times relevant herein, were residents of the

State of California.  Each of these Plaintiffs encountered access barriers on Defendant's Website and was unable to use Defendant's Website, deterring him/her from visiting Defendant's brick-and-mortar location(s).

21. Upon information and belief, Plaintiffs allege that Defendant owns, operates, markets and/or monetizes restaurants, including one(s) located within California.  The restaurant(s), which are places of public accommodation open to the public, offer various dining and drink options to customers.

22. Upon information and belief, Plaintiffs allege that Defendant owns, operates, manages, updates and/or monetizes its Website, which provides to the public a wide array of services, information, online reservation features, price lists, menus and/or other programs relating to the brick-and-mortar restaurant(s).

23. Plaintiffs are informed and believe, and thereon allege that, at all relevant times, Defendant has continuously been doing business in California.

24. Plaintiffs are informed and believe, and thereon allege that Defendant is in control of the fundamental aspects of the Website which gives rise to the violations stated herein.

25. Defendant's brick-and-mortar restaurant(s), including ones located in California, are places of public accommodation open to the public, that offer various dining and drink options to customers.  *See* 42 U.S.C. § 12181(7) and UCRA, Cal. Civ. Code § 51, *et seq*.  Defendant's Website is a service, privilege, or advantage of Defendant's physical location(s).  Through the Website, customers may review various dining and drink options, access information concerning Defendant's services, promotions and offers and/or make dining reservations.

26. The access barriers Plaintiffs encountered on Defendant's Website have caused a denial of Plaintiffs' full and equal access multiple times in the past, and now deter Plaintiffs on a

regular basis from full access to Defendant's Website. Similarly, the access barriers Plaintiffs encountered on Defendant's Website have impeded Plaintiffs' full and equal enjoyment of goods and services offered at Defendant's brick-and-mortar location(s).

27. The true names or capacities, whether individual, corporate, associate or otherwise of defendants, DOES 1 through 10, inclusive, are unknown to Plaintiffs who therefore sues said DOE defendants by such fictitious names.

28. Plaintiffs are informed and believe, and thereon allege that each of the defendants designated herein as a DOE is responsible for the unlawful acts as herein alleged, and Plaintiffs will ask leave of the Court to amend this complaint to show its true names and capacities when same have been ascertained.

29. Plaintiffs are informed and believe, and thereon allege that at all times herein mentioned Defendants, and each of them, were the agents, servants and employees each of the other, acting within the course and scope of said agency and employment, with the full knowledge and consent of each of the Defendants. Each of the acts and/or omissions alleged herein were made known to and ratified by each of the Defendants (including any DOE defendant).

30. Defendant and each and every DOE Defendant shall be referred to collectively as "Defendants" hereafter.

## IV. FACTUAL ALLEGATIONS

31. Plaintiffs and the Class Members are informed and believe, and thereon allege that Defendants operate a brick-and-mortar location(s) that offer services for sale to the general public, including but not limited to restaurant(s).

32. Plaintiffs and the Class Members are informed and believe, and thereon allege that Defendants operate, maintain, update, monetize and/or own a branded Internet website located at

https://www.juniperandivy.com/ for potential and existing customers to conveniently obtain information relating to Defendant's services, promotions, offers and/or make reservations related to dining experiences, and other services.

33. Customers use Defendants' Website to access many services available at Defendants' brick-and-mortar location(s).

34. It is undisputed that the Internet has become a significant source of information for conducting business and for doing everyday activities such as shopping, banking, etc., for sighted and visually impaired individuals.  When properly accessible, the Internet provides individuals with disabilities significant independence.  Visually impaired individuals regularly access a broad range of accessible Internet websites through the use of screen-reader technology, which can translate visual information on a website into nonvisual formats such as synthesized speech and refreshable Braille.

35. Visually impaired individuals regularly access a broad range of accessible Internet websites through the use of screen-reader technology, which can translate visual information on a website into nonvisual formats such as synthesized speech and refreshable Braille.

36. Except for legally blind individuals whose residual vision allows them to use them to use magnification, screen reading technology is the only method which allows visually impaired individuals independent access to the Internet.  In this case, Plaintiffs can only access the Internet independently with the assistance of a screen-reader.

37. For the screen reader technology to function, the information on a website must be capable of being rendered into meaningful text.  If the website content is constructed such that it cannot be rendered into meaningful text, visually impaired individuals are unable to access the

same content available to sighted individuals because they cannot detect what is depicted on the screen and, for example, click where required to access further information and services.

38. There are well-established industry adopted guidelines for making websites accessible to visually impaired individuals. These guidelines have been in place for at least several years and have been followed successfully by other large business entities in making their websites accessible. The Web Accessibility Initiative ("WAI"), a project of the World Wide Web Consortium which is the leading standards organization of the Web, has developed guidelines for website accessibility.

39. The federal government has also promulgated website accessibility standards under Section 508 of the Rehabilitation Act. These guidelines are readily available via the Internet, so that a business designing a website can easily access them.

40. These guidelines recommend several basic and easily to implement components for making websites accessible, including, but not limited to: adding invisible alt-text to graphics; ensuring that all functions can be performed using a keyboard and screen reader; ensuring that image maps are accessible; removing empty links or headings which are confusing; removing PDF documents which do not allow screen-readers to fully and properly read the text; and adding headings and links so that visually impaired people can easily navigate the site. Without these very basic components a website will be inaccessible to a visually impaired person using a screen reader.

41. In this case, based on information and belief, Plaintiffs and the Class Members allege that Defendants have a policy and practice of denying the visually impaired full access to their Website, including access to the services offered by Defendants through their Website. Due to Defendants' failure and refusal to remove access barriers to their Website, visually impaired

individuals have been and are being denied equal access to Defendants' brick-and-mortar location(s), as well as to the numerous services and benefits offered to the public through their Website.

42. Defendants deny the visually impaired full access to services and information made available through their Website by preventing them from freely navigating the Website.

43. Defendants' Website contains access barriers that prevent free and full use by visually impaired persons using keyboards and screen reading software. These barriers are pervasive and include, but are not limited to: lack of alt-text or text equivalent on graphics, inaccessible forms, the lack of adequate prompting and labeling, the denial of keyboard access, empty links and headings, inability to complete important tasks using the keyboard and screen reader alone, and/or documents in PDF or other inaccessible formats, which are not fully readable or navigable using a screen reader.

44. Alternative text ("Alt-text") is invisible code embedded beneath a graphical image on a website. Web accessibility requires that alt-text be coded with each picture so that a screen reader can speak the alternative text while a sighted user sees the picture. Alt-text does not change the visual presentation except that it appears as a text pop-up when the mouse moves over the picture. There are many important pictures on Defendants' Website that lack a text equivalent. The lack of Alt-text on these graphics prevents screen readers from accurately vocalizing a description of the graphics. Screen readers detect and vocalize Alt-text to provide a description of the image to a blind computer user.  As a result, visually impaired customers of Defendants are unable to effectively determine what is on the Website and fully browse the site.

45. Defendants' Website also includes numerous instances of empty links and headings which prevent visually-impaired individuals from recognizing the function or purposes of links

and headings contained in the Website.  If a link or heading contains no text, the function or purpose of the link or heading will not be presented to the user. This can introduce confusion for keyboard and screen reader users.

46. As another example of barriers present on Defendants' Website, there are several occurrences of links to documents in either PDF or other inaccessible formats which cannot be competently read by screen readers.  This includes, but is not limited, to specific information relating to Defendants' services, goods, promotions and/or offers, which are not fully accessible to visually impaired screen readers.  In general, unless authored with accessibility in mind, documents in PDF or other inaccessible formats often have accessibility issues. Additionally, such documents are typically viewed using a separate application or plug-in, and can thus cause confusion and navigation difficulties.  In fact, the text that is accessible in such documents is presented in a confusing, scattered manner to screen reader users, not readily allowing navigability and creating significant barriers to access.

47. Finally, as another example of barriers present on Defendant's Website, there are several occurrences where functions cannot be performed using a keyboard and screen reader.  This includes, but is not limited, to sections concerning specific information relating to Defendants' services, goods, promotions and/or offers, which are not fully accessible to visually impaired screen readers.

48. Due to Defendants' Website inaccessibility, visually impaired customers of Defendants cannot independently investigate services and programs offered by Defendants via the Internet as sighted individuals can and do.

49. Defendants' Website thus contains significant access barriers which deny full and equal access to Plaintiffs, and Class Members, who would otherwise use their Website and who would

otherwise be able to fully and equally enjoy the benefits and services of Defendants' brick-and-mortar location(s).

50. Plaintiffs have personally patronized Defendants' Website in the past, including as recently as early 2022, and intend to continue to patronize Defendants' Website. However, unless Defendant is required to eliminate the access barriers at issue, and required to change their policies so that access barriers do not reoccur on Defendants' Website, Plaintiffs and the Class Members will continue to be denied full access to the Website as described, and will be deterred from fully using Defendants' Website.

51. Specifically, the last time Plaintiff McKinney attempted to do business with Defendants using their Website was in early 2022, and she still encountered barriers to access on their Website.  Despite past and recent attempts to do business with Defendants on their Website, the numerous access barriers contained on the Website and encountered by Plaintiffs and the Class Members have denied Plaintiffs and the Class Members full and equal access to Defendants' Website. Plaintiffs and the Class Members, as a result of the barriers on the Website, continue to be deterred on a regular basis from accessing Defendant's Website. Likewise, based on the numerous access barriers Plaintiffs and the Class Members have been precluded from the full and equal enjoyment of services offered in Defendants' physical location.

52. If Defendants' Website was equally accessible to all, Plaintiffs and the Class Members could independently navigate the Website, review dining options, and find other information relating to Defendants' services, as sighted individuals do.

53. Through their many attempts to use Defendants' Website, Plaintiffs have actual knowledge of the access barriers that make these privileges or services inaccessible and independently unusable by blind and visually-impaired people.

---

54. There are readily available and easy to implement guidelines, available to Defendant on the Internet, for designing, constructing and maintaining websites to be accessible to blind and visually-impaired persons. Other large business entities have used these guidelines, or have otherwise been able, to make their websites accessible, including but not limited to: adding alt-text to graphics, including labels for each form control and text for all links, providing alternatives to inaccessible documents and ensuring that all significant functions can be performed using a keyboard.  In addition, incorporating these basic changes and adding certain elements to Defendants' Website accessibility would not fundamentally alter the nature of Defendants' business nor would it result in an undue burden to Defendants.

55. Because maintaining and providing a website where all functions can be performed using a keyboard, would provide full, independent and equal accessible to all consumers, Plaintiffs allege that Defendants have engaged in acts of intentional discrimination, including but not limited to the following policies or practices:

    a.   Construction and maintenance of a Website that is inaccessible to visually-impaired individuals, including Plaintiff;

    b.   Failure to construct and maintain a website that is sufficiently intuitive so as to be equally accessible to visually-impaired individuals, including Plaintiff; and,

    c.   Failure to take actions to correct these access barriers in the face of substantial harm and discrimination to blind and visually-impaired consumers, such as Plaintiff.

56. Because Defendants' Website has never been equally accessible, and because Defendants lack a corporate policy that is reasonably calculated to cause the Website to become and remain

accessible, Defendants therefore use standards, criteria or methods of administration that have the effect of discriminating or perpetuating the discrimination of others, as alleged herein.

57. If Defendants' Website were equally and fully accessible to all, Plaintiffs and similarly situated visually impaired people could independently view information on the Website, review dining options and other information relating to services available via Defendants' Website.

58. Although Defendants may currently have centralized policies regarding the maintenance and operation of their Website, Defendants lack a plan and policy reasonably calculated to make the Website fully and equally accessible to, and independently usable by, the visually impaired.

59. Without injunctive relief, Plaintiffs and other visually-impaired consumers, including Class Members, will continue to be unable to independently use the Defendants' Website in violation of their rights.

## V. CLASS ACTION ALLEGATIONS

60. Plaintiffs, on behalf of themselves and all others similarly situated, seek to certify a California class under California *Code of Civil Procedure* section 382 and California *Civil Code* section 1781, initially defined as follows:

> All legally blind individuals in the State of California who have attempted to access Defendants' website by the use of a screen reading software during the applicable limitations period up to and including final judgment in this action.

61. Excluded from the Class are Defendants' officers, employees, agents or affiliates, and any judge who presides over this action, as well as past and present employees, officers and directors of Defendants.  Plaintiffs reserve the right to expand, limit, modify, or amend this Class definition, including the addition of one or more subclasses, in connection with their motion for class certification, or at any other time, based upon, inter alia, changing circumstances and/or new facts obtained during discovery.

## A.      Commonality

62. There are questions of law and fact that are common to the claims of Plaintiffs.  Among these common questions are the following:

(a)   Whether Defendants' Website, https://www.juniperandivy.com/, is inaccessible to the visually-impaired who use screen reading software to access internet websites;

(b)  Whether Plaintiffs and Class Members have been unable to access https://www.juniperandivy.com/ through the use of screen reading software;

(c)  Whether the deficiencies in Defendants' Website violate the Americans with Disabilities Act of 1990, 42 U.S.C. § 12181 *et seq.*;

(d)  Whether the deficiencies in Defendants' Website violate the California Unruh Civil Rights Act, California Civil Code § 51 *et seq.*;

(e)   Whether, and to what extent, injunctive relief should be imposed on Defendants to make https://www.juniperandivy.com/ readily accessible to and usable by visually-impaired individuals;

(f)  Whether Plaintiffs and Class Members are entitled to recover statutory damages with respect to Defendants' wrongful conduct; and

(g)  Whether further legal and/or equitable relief should be granted by the Court in this action.

## B.      Numerosity

63. The members of the Class are so numerous that separate joinder of each member is impracticable. While the exact number and identities of other Class Members are unknown to Plaintiffs at this time, Plaintiffs are informed and believe that there are thousands

of Members in the Class. The Members of the Class are so numerous that joinder of all Members is impracticable, and the disposition of their claims in a class action rather than in individual actions will benefit the parties and the Court.

**C.    Typicality**

64.  Plaintiffs and Class Members' claims are typical of the claims of Members of the Class as all Members of the Class are similarly affected by Defendant's wrongful conduct, as detailed herein.

65. Upon information and belief, there has never been a prior lawsuit certified as a class on behalf of Plaintiffs based on the allegations in this Complaint.

**D.    Adequacy of Representation**

66. Plaintiffs will fairly and adequately protect the interests of the Class and are committed to the vigorous prosecution of this action. They have retained competent counsel, experienced in litigation of this nature, to represent her and members of the Class. There is no hostility between Plaintiffs and the unnamed Class members.  Plaintiffs anticipate no difficulty in the management of this litigation as a class action.

67. To prosecute this case, Plaintiff have chosen the law firm of Beverly Hills Trial Attorneys, P.C., whose attorneys have represented plaintiffs in class actions and as private attorneys general in bringing public interest actions.

**E.    Superiority**

68. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Since the damages sustained by individual Class Members may be relatively small, the expense and burden of individual litigation makes it impracticable for the Members of the Class to individually seek redress for the wrongful conduct alleged herein.

Furthermore, the adjudication of this controversy through a class action will avoid the potentially inconsistent and conflicting adjudications of the claims asserted herein. There will be no difficulty in the management of this action as a class action. If Class treatment of these claims were not available, Defendant would likely unfairly receive thousands of dollars or more in improper revenue.

69. *Common Questions Predominate:* Common questions of law and fact exist as to all Members of the Class and predominate over any questions solely affecting individual Members of the Class. Among the common questions of law and fact applicable to the Class are:

(a)   Whether Defendants' Website, https://www.juniperandivy.com/, is inaccessible to the visually-impaired who use screen reading software to access internet websites;

(b) Whether Plaintiffs and Class Members have been unable to access https://www.juniperandivy.com/ through the use of screen reading software;

(c) Whether the deficiencies in Defendants' Website violate the Americans with Disabilities Act of 1990, 42 U.S.C. § 12181 *et seq.*;

(d) Whether the deficiencies in Defendants' Website violate the California Unruh Civil Rights Act, California Civil Code § 51 *et seq.*;

(e)   Whether, and to what extent, injunctive relief should be imposed on Defendants to make https://www.juniperandivy.com/ readily accessible to and usable by visually-impaired individuals;

(f) Whether Plaintiffs and Class Members are entitled to recover statutory damages with respect to Defendants' wrongful conduct; and

(g) Whether further legal and/or equitable relief should be granted by the Court

in this action.

70.  The class is readily definable, and prosecution of this action as a Class action will reduce the possibility of repetitious litigation. Plaintiffs do not foresee any issues in the management of this litigation which would preclude the maintenance of this matter as a Class action.

71.  The prosecution of separate actions by Members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendants. Additionally, individual actions may be dispositive of the interest of all Members of the Class, although certain Class Members are not parties to such actions.

72.  Defendants' conduct is generally applicable to the Class as a whole and Plaintiffs seek, inter alia, equitable remedies with respect to the Class as a whole. As such, Defendants' systematic policies and practices make declaratory relief with respect to the Class as a whole appropriate.

## FIRST CAUSE OF ACTION
### Violation Of The Americans With Disabilities Act
### (42 U.S.C. § 12181, *et seq.*)

73. Plaintiffs re-allege and incorporate by reference all paragraphs alleged above and each and every other paragraph hereafter necessary or helpful to state this cause of action as though fully set forth herein.

74. Section 302(a) of Title III of the ADA, 42 U.S.C. § 12181 *et seq.*, provides: "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a).

75. Under Section 302(b)(2) of Title III of the ADA, unlawful discrimination also includes, among other things: "a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations"; and "a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden." 42 U.S.C. § 12182(b)(2)(A)(ii)-(iii). "A public accommodation shall take those steps that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the public accommodation can demonstrate that taking those steps would fundamentally alter the nature of the goods, services, facilities, privileges, advantages, or accommodations being offered or would result in an undue burden, i.e., significant difficulty or expense." 28 C.F.R. § 36.303(a). In order to be effective, auxiliary aids and services must be provided in accessible formats, in a timely manner, and in such a way as to protect the privacy and independence of the individual with a disability." 28 C.F.R. § 36.303(c)(1)(ii). Defendant's location is a "public accommodation" within the meaning of 42 U.S.C. § 12181 *et seq*. Defendants generate significant revenue, either directly or indirectly, from access to their Website.  Defendants' Website is a service provided by Defendants that is not fully accessible to

patrons who are blind or visually-impaired like Plaintiffs. This inaccessibility denies visually impaired customers full and equal enjoyment of and access to the facilities and services, privileges, advantages, and accommodations that Defendant makes available to the non-disabled public. Defendant is violating the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq*., in that Defendant denies visually impaired customers the services, privileges, advantages, and accommodations provided by https://www.juniperandivy.com/. These violations are ongoing.

76. Defendant's actions constitute intentional discrimination against Plaintiffs on the basis of a disability in violation of the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq*. in that: Defendant has constructed a website that is inaccessible to Plaintiffs; maintains the website in this inaccessible form; and has failed to take adequate actions to correct these barriers even after being notified of the discrimination that such barriers cause.

77. Pursuant to 42 U.S.C. § 12188 and the remedies, procedures, and rights set forth and incorporated therein, Plaintiffs request relief as set forth below.

## SECOND CAUSE OF ACTION
### Violation of Unruh Civil Rights Act
### (California Civil Code §§ 51, 52, *et seq.*)

78. Plaintiffs re-allege and incorporate by reference all paragraphs alleged above and each and every other paragraph hereafter necessary or helpful to state this cause of action as though fully set forth herein.

79. The Unruh Civil Rights Act guarantees, *inter alia*, that persons with disabilities are entitled to full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever within the jurisdiction of the state of California. *See* Cal. Civ. Code § 51(b).

80.   Defendants own, operate, supervise, and/or manage a restaurant, which provide services to the general public in California and elsewhere.  Defendants' business establishment is within the jurisdiction of the state of California, and as such are obligated to comply with the provisions of the UCRA, California Civil Code §§ 51, *et seq.*

81.   Upon information and belief, Defendants generate significant revenue, either directly or indirectly, from access to their Website. Defendants' Website is a service provided by Defendants that is not fully accessible to patrons who are blind or visually-impaired like Plaintiffs.  This inaccessibility denies blind and visually-impaired patrons full and equal access to the facilities, goods, and services that Defendants make available to the non-disabled public. Defendants are violating the UCRA, Civil Code §§ 51, *et seq.*, by denying visually-impaired customers the goods and services provided on their Website. These violations are ongoing.

82.   Defendants' actions constitute intentional discrimination against Plaintiffs and the Class Members on the basis of a disability, in violation of the UCRA, Civil Code §§ 51, *et seq.*, because, among other things, (1) Defendants have constructed, maintained, owned, monetized and/or operated a Website that is inaccessible to visually impaired individuals, such as Plaintiffs; (2) Defendants have opted to maintain this Website in such an inaccessible form despite well-established and readily implementable industry guidelines for making websites accessible; (3) and Defendants have failed to take action to correct and rectify these barriers even after being on notice of the discrimination that such barriers may create for visually impaired individuals, such as Plaintiffs.

83.   Defendants are further violating the UCRA, Civil Code §§ 51, *et seq.*, because the conduct as alleged herein violates various provisions of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101, *et seq.*, for the reasons set forth above.  Under Cal. Civ. Code §

51(f), a violation of an individual's rights under the ADA also constitutes a violation under the UCRA. Defendants' discriminatory conduct alleged herein includes, *inter alia*, the violation of the rights of persons with disabilities set forth in Title III of the ADA and, therefore, also violates the Unruh Act. *See* Cal. Civ. Code § 51(f).

84.  Unless the Court enjoins Defendants from continuing to engage in these unlawful practices, Plaintiffs and the Class Members will continue to suffer irreparable harm. Plaintiffs and the Class Members are therefore entitled to injunctive relief remedying the discrimination. Plaintiffs expressly limit the cost of injunctive relief sought to $15,000 or less.

85.  Plaintiffs and Class Members are also entitled to statutory minimum damages pursuant to UCRA, Civil Code § 52 for each and every offense. Plaintiffs hereby expressly limits the amount Plaintiffs seek for all offenses to a total of $34,999 or less.

86.  Plaintiffs and Class Members are further entitled to reasonable attorneys' fees and costs.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of all Class Members, respectfully requests judgment against Defendants, as follows:

A.  For an Order certifying the Class as defined herein and appointing Plaintiffs and her Counsel to represent the Class;

B.  A preliminary and permanent injunction pursuant directing Defendant to comply with the Americans with Disability Act and the Unruh Civil Rights Act, and requiring Defendant to take the steps necessary to make  https://www.juniperandivy.com/, and all of the webpages and urls contained therein readily accessible to and usable by visually impaired individuals;

C.  For an award of all appropriate damages to Plaintiffs and the proposed Class members, including but not limited to statutory damages, general damages and treble damages in amounts, according to proof;

D.  For attorneys' fees and expenses, and costs of suit pursuant to all applicable laws;

E.  For pre-judgment interest to the extent permitted by law;

F.  For such other and further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs, on behalf of themselves and all others similarly situated, hereby respectfully request a trial by jury on all appropriate issues raised in this Complaint.

Dated: November 14, 2022                    **BEVERLY HILLS TRIAL ATTORNEYS, P.C.**

*/s/ Azar Mouzari*
Azar Mouzari, Esq.
Nilofar Nouri, Esq.
Attorney for Plaintiffs

1

## CERTIFICATE OF SERVICE

2

3        I hereby certify that I electronically filed the foregoing with the Clerk of the United

4  States District Court Central District of California by using the CM/ECF system on November

5  14, 2022.

6        I further certify that all participants in the case appear to have been registered CM/ECF

7  users and that service should therefore be accomplished by the CM/ECF system via

8  electronically mail to all counsel of record.

9        I declare under penalty of perjury under the laws of the State of California that the

10 foregoing is true and correct.

11

12        Executed on November 14, 2022, in Los Angeles, California.

13

14                                            */s/ Nilofar Nouri*
15                                            Nilofar Nouri

16

17

18

19

20

21

22

23

24

25

26

27

28